UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL FEDERATION OF THE BLIND**, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 20-cv-1160 (TSC) |
| **ANDREW SAUL**, | ) ) ) |
| Defendant. | ) ) ) |

### MEMORANDUM OPINION

Plaintiffs, the National Federation of the Blind and four individuals who are blind, bring this action under the Rehabilitation Act, 29 U.S.C. § 794(a), against the Commissioner of Social Security. Plaintiffs claim that requiring "wet-ink" (i.e., on paper instead of electronic) signatures for certain Social Security documents deprives applicants who are blind of the opportunity to submit their documents independently and privately and violates the Rehabilitation Act. Because of the additional risks COVID-19 creates, Plaintiffs move for a preliminary injunction to require the Social Security Administration (SSA) to accept electronic signatures on all required documentation and to provide online procedures for all disability benefits applications and other materials. (ECF No. 2 at 2.) Having reviewed the parties' filings, and for the reasons set forth below, the court will DENY Plaintiffs' Motion for a Preliminary Injunction.

### I.   BACKGROUND

#### A. Factual Background

Title II of the Social Security Act, 42 U.S.C. § 301 *et seq.*, authorizes payment of Social Security Disability Insurance (SSDI) to certain people with disabilities. 42 U.S.C. § 423(a)(1). Title XVI of the Act authorizes payment of Supplemental Security Income (SSI) to people with

limited income and resources who are disabled, blind, or age 65 or older. *See* 42 U.S.C. §§ 1381a; 1382; 1382c. SSA serves approximately 18 million beneficiaries and distributes over $200 billion annually. (ECF No. 15-1, First Richardson Decl., ¶ 5.) In response to the current COVID-19 pandemic[1], SSA transitioned 60,000 employees to working from home, where they interact with the public by telephone and are able to process applications. (First Richardson Decl. ¶ 19.) Plaintiffs seek to apply for or maintain benefits during the pandemic.

1. Social Security

   i. *Applying for and Maintaining Benefits*

SSA provides four ways in which to apply for SSDI or SSI benefits: in person, by mail, by phone, or online. (First Richardson Decl. ¶ 14; *see also* 20 C.F.R. § 422.505(a).) For SSDI, a claimant can use any method; for SSI, a claimant can use the first three methods and can use the fourth method—online application—only when they meet certain criteria and are simultaneously applying for SSDI. (First Richardson Decl. ¶¶ 14, 37–40.) When Plaintiffs filed suit, SSA's website stated that individuals who are blind could not submit the online application for SSI. After Plaintiffs brought this case, SSA removed this language. (First Richardson Decl. ¶ 41; Second Richardson Decl. ¶ 55.)

Regardless of how a person applies for benefits, they must sign or otherwise attest to their application. The signing methods available vary depending on the application method and

---

[1] COVID-19 is a contagious disease caused by the novel coronavirus SARS-CoV-2. By March of this year, the President declared a national state of emergency and the World Health Organization declared a global pandemic. As of July 22, 2020, there have been 3,882,167 diagnosed cases of COVID-19 and 141,677 deaths in the United States. Centers for Disease Control and Prevention (CDC), Cases in the U.S. (July 22, 2020). The virus is highly contagious and spreads through person-to-person contact. Certain populations are at higher risk for severe illness from COVID-19, including older adults and people with certain underlying medical conditions. CDC, People Who Are at Increased Risk for Severe Illness (July 22, 2020). To date, no vaccine or cure for COVID-19 exists.

whether an appointed representative submits the application. (First Richardson Decl. ¶ 35.) When applying in person, an applicant can simply submit a wet-ink signature. However, because of the ongoing COVID-19 pandemic, in-person applications are not being accepted. (*Id.* ¶ 23.) When applying by phone, with or without a representative on the line, an applicant can verbally attest to their application. (*Id.* ¶ 35.) If an individual applies online and submits the application themselves, they can sign electronically. (*Id.* ¶ 36.) But if an individual applies online and their representative submits the application, the applicant must separately attest to the application because a representative cannot sign an application on behalf of an applicant who is over 18, mentally competent, and physically able to sign. (*Id.* ¶ 57; *see also* 20 C.F.R. §§ 404.612, 404.1710(b), 416.315; 416.1510(b).) In such cases, the agency mails a hard copy for the applicant to sign. (First Richardson Decl. ¶ 36.) The applicant can either mail the hard copy back with a wet-ink signature or verbally attest to the application on a call with SSA. (First Richardson Decl. ¶ 57; Second Richardson Decl. ¶ 25.)

SSA defines an applicant's official (or protective) filing date, which is used in calculating benefits, as the date of initial contact with the agency. (Second Richardson Decl. ¶ 43.) This includes the date on which an applicant schedules an appointment to apply by phone or partially completes an online application that is later submitted. (*Id.* ¶¶ 43–44.) This protective filing date has taken on added importance during the pandemic, as SSA has extended deadlines for requests for information whenever possible. (First Richardson Decl. ¶ 33.)

SSA periodically conducts a Continuing Disability Review (CDR) to determine whether SSDI and SSI beneficiaries continue to remain eligible for benefits. 42 U.S.C. § 421(i); 20 C.F.R. § 404.1590 (SSDI); 20 C.F.R. § 416.990 (SSI); *see also* 20 C.F.R. § 404.1594 (describing CDR under SSDI); 20 C.F.R. § 416.994 (describing CDR under SSI). CDRs occur at three-,

five-, or seven-year intervals, depending on the permanence of the disability.  20 C.F.R. § 404.1590(d) (SSDI); 20 C.F.R. § 416.990(d) (SSI).  While SSA did not conduct CDRs for several months during the pandemic, it resumed them in early June.  (Second Richardson Decl. ¶ 53.)  A beneficiary can complete the CDR report by phone, but must mail the disability update report with a wet-ink signature.  (First Richardson Decl. ¶¶ 29 n.7, 32 n.10.)  SSA indicates that it will change this process and permit beneficiaries who are blind to complete the disability update report by phone.  (Second Richardson Decl. ¶ 54.)

> ii. *Appointing Representatives*

Claimants may formally appoint a representative to assist them in presenting their case to the agency.  42 U.S.C. § 406(a)(1).  A representative can: 1) obtain the same information about the claim as the claimant, 2) submit evidence, 3) make statements about facts and law, and 4) make a request or provide notice about the proceedings before SSA.  20 C.F.R. § 404.1710(a) (SSDI); 20 C.F.R. § 416.1510(a) (SSI).  Representatives cannot sign an application on behalf of a claimant.  *See* 20 C.F.R. §§ 404.612; 404.1710(b); 416.315; 416.1510(b).  A third party can also assist a claimant without being formally appointed as a representative.  (First Richardson Decl. ¶¶ 48, 55.)

To formally appoint a representative, claimants must submit a signed, written statement to SSA, typically using the notice of appointment form.  (First Richardson Decl. ¶ 50; 20 C.F.R. § 404.1707(a).  When Plaintiffs filed this case, SSA required wet-ink signatures on this form; it has since implemented a temporary procedure in which the form can be signed electronically; SSA will then get a verbal attestation from the claimant.  (First Richardson Decl. ¶ 51.)  SSA has also temporarily permitted representatives to submit the claimant's electronic signature on the fee agreement form, as long as they submit it with the notice of appointment form.  (*Id.* ¶ 51.)

2. Plaintiffs

NFB is a national organization of persons who are blind, and has over 50,000 members and affiliates throughout the country. (ECF No. 1, Compl., ¶ 13.) NFB aims to remove legal, economic, and social discrimination against blind people. (*Id.*) Many of its members receive social security benefits, including SSDI and SSI. (*Id.* ¶ 14.) Plaintiff Timothy Cole is 54 and has cancer, which prevents him from working and makes him particularly vulnerable to COVID-19. (*Id.* ¶ 17.) Cole intends to apply for SSDI and possibly SSI. (*Id.*) Plaintiff Jack Stephens is 61 years old, has multiple disabilities, and lives alone in a rural community. (*Id.* ¶ 18.) Stephens is unemployed and "in the process" of applying for SSDI and SSI with the help of an attorney. (*Id.*) Plaintiff William Ashlock is 60 years old and has low vision, making it impossible for him to read small print without magnification. (*Id.* ¶ 19.) He seeks to apply for SSDI and SSI with the help of an attorney. (*Id.*) Ashlock is at risk of severe complications if he contracts COVID-19. (*Id.*) Plaintiff Maryann Murad is 48 years old and is blind. (*Id.* ¶ 20.) Murad has received SSDI benefits for nearly twenty-five years. (*Id.*) She is undergoing a CDR this year. (*Id.*)

B. **Procedural History**

Plaintiffs initially moved for a preliminary injunction requiring SSA to accept electronic signatures on all required documentation and to provide an online process for applying for and maintaining disability benefits for all applicants and beneficiaries. (ECF No. 2 at 2.) In response, SSA made substantial, temporary changes to the process for appointing a representative that eliminated the need for wet-ink signatures and permitted a combination of electronic signature and verbal attestation. (First Richardson Decl. ¶ 51.) SSA also removed inaccurate information on its website prohibiting blind people from applying online for SSI. (*Id.* ¶ 51.) Despite these changes, which they acknowledge are a "substantial step in the right

direction," (ECF No. 19, Pl. Supp. Br., 7), Plaintiffs continue to seek a preliminary injunction, contending that these revised procedures are incomplete and inadequate. (*Id.*) After the court ordered additional briefing, Plaintiffs requested alternative injunctive relief requiring SSA to allow claimants whose representative submits their online application to complete it with electronic signatures and have one phone call to verify all forms. (*Id.* at 12.) They also ask the court to order SSA to allow applicants to verify their documents "with any SSA agent they reach," to require SSA representatives to leave a message with a working call-back number, and to ensure that any SSA employee an applicant calls back can be reached within approximately 15 minutes. (*Id.*) Finally, they ask the court to order SSA to publicize the revised procedures. (*Id.*) While it is unclear from Plaintiffs' briefing, the court construes this second set of requests as alternative relief, were the court were to reject Plaintiffs' original request for electronic signatures and online applications across the board.

## II.     LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations and quotation marks omitted). A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citations and quotation marks omitted) (emphasis in original). Courts consider four factors on a motion for a preliminary injunction: 1) the likelihood of the plaintiff's success on the merits, 2) the threat of irreparable harm to the plaintiff absent an injunction, 3) the balance of equities, and 4) the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on

another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). It has been suggested, however, that a movant's showing regarding success on the merits "is an independent, free-standing requirement for a preliminary injunction." *Id.* at 393 (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)). Under either approach, however, the movant must always show irreparable harm, and if a movant cannot do so, the court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

The D.C. Circuit has cautioned that "[t]he power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (internal quotation marks and citation omitted). Where the plaintiff's requested injunction is mandatory, "that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act," the plaintiff must "meet a higher standard than in the ordinary case" by showing they are "clearly" "entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (internal quotation marks and citation omitted) (collecting cases).

Based on the record before it, the court finds that a preliminary injunction is not warranted under either standard.

### III.   ANALYSIS

A. **<u>Irreparable Harm</u>**

While "[t]he concept of irreparable harm does not readily lend itself to definition," *Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007), Plaintiffs bear a "considerable burden" to establish irreparable harm. *Power Mobility Coal. v.*

7

*Leavitt*, 404 F.Supp.2d 190, 204 (D.D.C. 2005) (citing *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  The movant must "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674 (internal quotation marks and citation omitted).  The party seeking injunctive relief must prove that the purported injuries are "both certain and great," "actual and not theoretical," and imminent.  *Id.*  The movant must also "substantiate the claim" of irreparable harm and "show that the alleged harm will directly result from the action which the movant seeks to enjoin." *Id.*  Finally, the harm claimed must be "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

   1. COVID-19

Plaintiffs initially alleged that they would suffer irreparable harm because the fact that SSA had no comprehensive online procedures meant some applicants would risk exposure to COVID-19 by having to submit documentation by mail.  (ECF No. 2-1, Pl. Br., at 26–28.)  The court assumes without deciding that the increased risk of exposure to COVID-19 constitutes irreparable harm.  Nonetheless, Plaintiffs have not shown that SSA's lack of comprehensive online procedures create an increased risk of exposure to COVID-19.  SSA offers comprehensive telephone procedures that eliminate the need for an applicant to use the mail and therefore reduces an applicant's risk of exposure to COVID-19.[2]  All SSI and SSDI applicants can apply by telephone and, if applying online with an authorized representative, can finalize their applications by phone.  (First Richardson Decl. ¶¶ 35–36, 57; Second Richardson Decl. ¶ 25.)  In

---

[2] Plaintiffs do not suggest that SSA's telephone procedures create a risk of exposure to COVID-19 that would be alleviated by online procedures.  Instead, they argue that online procedures are more convenient and, because SSA does not offer them to blind applicants, Plaintiffs are denied equal opportunity to apply for benefits.  (ECF No. 17, Pl. Reply 11–15.)

8

addition, the forms used for CDRs can be submitted by phone.  (First Richardson Decl. ¶¶ 29 n.7, 32 n.10; Second Richardson Decl. ¶ 54.)[3]  Therefore, the court finds that Plaintiffs have not shown that the threat of exposure to COVID-19 due to SSA's procedures for applying for or maintaining SSDI or SSI is "certain, "great," and "actual and not theoretical."  *Wis. Gas Co.*, 758 F.2d at 674.

After Plaintiffs filed suit, SSA implemented changes in the procedures for appointing a representative.  As of May 21, 2020, for the duration of the COVID-19 pandemic, claimants can use a combination of electronic signature and telephone attestation to appoint a representative.  (First Richardson Decl. ¶ 51.)  Therefore, the court finds that Plaintiffs have not shown the threat of exposure to COVID-19 due to SSA's procedures for appointing a representative is "certain, "great," and "actual and not theoretical."  *Wis. Gas Co.*, 758 F.2d at 674.

After this case was filed, SSA also removed incorrect language on its website that stated blind people could not use the online platform for concurrent SSI applications.  (First Richardson Decl. ¶ 41; Second Richardson Decl. ¶ 55.)  SSA also intends to change the application to "eliminate some potentially confusing language" related to blind applicants.  (Second Richardson Decl. ¶ 55.)  The elimination of the inaccurate and potentially confusing language, coupled with the existing telephone procedures, assure that no blind applicant must use the mail application process during the pandemic.  Therefore, Plaintiffs have not shown irreparable harm from SSA's prior exclusion of blind applicants from the online SSI application.

---

[3] For several months during the pandemic, SSA did not conduct CDRs or cut off benefits.  (First Richardson Decl. ¶¶ 29–31.)  SSA has since resumed CDRs, which require two forms, one that can be completed by phone and another that SSA will permit blind applicants to complete by phone.  (First Richardson Decl. ¶¶ 29 n.7, 32 n.10; Second Richardson Decl. ¶ 54.)

9

Plaintiffs further ask the court to order SSA to publicize the changes. (Pl. Supp. Br. at 2, 12.) But SSA has already published the changes on its website and emailed representatives, notifying them of the changed procedures. (Second Richardson Decl. ¶¶ 51–52.) Moreover, Plaintiffs have not shown how failure to publicize the changes in the specific manner Plaintiffs request will result in irreparable harm for Plaintiffs or any of their members.

    2. <u>Delayed Award or Loss of Benefits</u>

Plaintiffs also argue that if they apply using the alternatives to online with electronic signature, they will suffer irreparable harm because their benefits will be delayed. (Pl. Supp. Br. 2–7.) While delays in awards of subsistence benefits can constitute irreparable harm, *Garnett v. Zeilinger*, 313 F. Supp. 3d 147, 158 (D.D.C. 2018), Plaintiffs have not shown that SSA's procedures cause substantial delay or that Plaintiffs are at substantial risk of losing benefits.

Plaintiffs contend that SSA's phone procedures are riddled with problems that cause substantial delays. (Pl. Supp. Br. at 8–10.) They claim that a representative called SSA to assist twelve clients in attesting to applications that were filed online by a third party, but only three clients were able to attest. (ECF No. 19-2, Kunkel Decl., ¶ 3–4.) The others were unable to attest on the call and were told they needed to reach their specific claim representative, make an appointment, or leave a voicemail. (Kunkel Decl. ¶¶ 4, 6, 9-13; *see also* ECF No. 17-3, Valentine Decl. ¶ 21.)

The problems Plaintiffs faced do not show that telephone applications result in substantial delay in award of benefits, because, as SSA explains, Plaintiffs did not follow SSA's standard procedures. (ECF No. 21, Def. Supp. Br., 8–9.) Typically, after a third party submits an online application, SSA assigns a claim representative, who is trained in taking applications and gathering additional required information, to each application. (Second Richardson Decl. ¶ 22–

23.) That representative then calls the claimant, usually within a week. (Second Richardson Decl. ¶¶ 23-26.) On that call the agent verifies that the claimant intended to file a claim (to protect against fraud) and obtains attestation by phone. (*Id.*) Plaintiffs, however, initiated contact with SSA; consequently, several agents informed them they needed to talk to their specific claim representative and tried to transfer them to their representative. (Kunkel Decl. ¶¶ 6, 11–13.) While the clients could not immediately attest to their application, they were consistently told that they could attest by phone with their claim representative.[4] Thus, while Plaintiffs' attempts at attestation were not consistently successful, they have not shown that the process is not available to claimants or that the process actually results in delays in awarding benefits.

Further, delay in completing a phone application or attestation does not necessarily result in loss of benefits or even delay in benefit awards. As noted above, a claimant establishes a protective filing date by submitting an online application (even a partial one) or scheduling an appointment to submit a phone application. (Second Richardson Decl. ¶ 43 (citing 20 C.F.R. §§ 404.614, 404.630, 404.632, 404.632, 404.633, 416.325, 416.340, 416.345, 416.350, 416.351).) The protective filing date establishes the date on which the application is deemed filed for all purposes, including calculating any benefits that may be awarded. (*Id.*) So, while Plaintiffs have detailed SSA's wait times, dropped calls, multiple transfers, and delays in

---

[4] During several calls, Plaintiffs spoke to two agents who were unaware of the correct phone application procedures. One agent had not heard of attestation by phone with a representative. (Kunkel Decl. ¶ 8.) The agent told the claimant that the agent would have to check whether that was possible; the agent did not give incorrect information that would discourage the claimant from using the phone procedures. (*Id.*) Another agent incorrectly told a claimant that they could not file a medical disclosure form with an electronic signature. (ECF No. 19-5, Quinn Decl., ¶ 4.) While that mistake is cause for concern, it appears to have been made in response to a hypothetical question.

11

returning phone calls, they have not shown that SSA's phone systems create unreasonable delay in awards of benefits. (ECF No. 17-1, Second Chermol Decl., ¶ 5; *see also* ECF No. 19-3, Yingling Decl., ¶ 5; ECF No. 19-4, Goodman Decl., ¶¶ 3-8.) Plaintiffs' averments about substantial delays in using the phone application and attestation procedures do not satisfy their burden to show their alleged loss of benefits is "both certain and great" and imminent. *Wis. Gas Co.*, 758 F.2d at 674.

Plaintiffs similarly contend that SSA's phone procedures for appointing representatives are not actually available and therefore cause substantial delays in benefit awards. (Pl. Supp. Br. at 8–10.) Plaintiffs again provided numerous declarations detailing the problems they encountered when they called SSA to use the telephone procedures for appointment of representatives. In one example, a representative called SSA and asked whether his client could appoint him as a representative by phone. (Valentine Decl., ¶¶ 3, 5, 8–9, 12–13.) Three different employees told him he could not. (*Id.* ¶¶ 5, 9, 13.) In another, after a representative submitted the appointment of representative and fee agreement forms with an electronic signature, an agent told her that SSA does not accept electronic signatures. (ECF No. 20-1, Ramirez Decl., ¶¶ 2-3; *see also* Yingling Decl. ¶ 12; ECF No. 19-6, Sanders Decl., ¶¶ 4–5.) While Plaintiffs have consistently shown that some SSA employees do not know the new options for signing appointment of representative forms, Plaintiffs have not shown that this delays award of benefits. The representative appointment process does not affect when SSA accepts Plaintiffs' applications or when the agency will award those benefits. (*See* Second Richardson Decl. ¶ 45.) Therefore, Plaintiffs have not shown irreparable harm stemming from some employees' lack of knowledge about the appointment of representative procedures.

Several individual Plaintiffs aver that they need benefits awarded soon to make ends meet. Cole and Stephens have been out of work since May 2019, and therefore need an award of benefits as quickly as possible to ensure they receive back benefits for the entire year they have been out of work. (ECF No. 21-4, Cole Decl., ¶¶ 4, 10; ECF No. 21-5, Stephens Decl., ¶¶ 4, 9.) Cole also needs benefits awarded by the end of November 2020 to ensure continued healthcare coverage. (Cole Decl. ¶¶ 9–10.) And Ashlock, who last worked full-time in 2019, submitted his SSDI application online on June 9, 2020, through his appointed representative. (ECF No. 2-6, First Ashlock Decl. ¶ 6; ECF No. 24-1, Second Ashlock Decl. ¶ 1.) Ashlock entered a treatment facility on June 18, and he could not attest to his application because during his first thirty days in the facility he could not use the phone. (Second Ashlock Decl. ¶ 6.)[5] While the court recognizes these Plaintiffs' difficult circumstances, SSA's procedures are not the entire cause of the delay in their applications' submission. SSA's telephone application, including with an authorized representative on the phone, has been available since before the pandemic. (First Richardson Decl. ¶ 35.) In addition, during the pandemic, SSA has taken into account the obstacles confronting applicants and has extended deadlines for requests for additional information where possible. (First Richardson Decl. ¶ 33.) Unfortunately, the delay in awarding benefits is caused in part by Plaintiffs' delay in submitting their applications, a fact that undermines their irreparable harm showing. *Cf. Barton v. District of Columbia*, 131 F. Supp. 2d

---

[5] Unfortunately, Ashlock also lacks access to a computer. (Second Ashlock Decl. ¶ 3.) It is unclear how Plaintiffs' proposed electronic signature system would remedy Ashlock's lack of access to phone and computer to complete his application—unless they seek to have his representative sign his application, which violates various regulations prohibiting a representative from signing on behalf of claimants who are competent. *See* 20 C.F.R. §§ 404.612, 404.1710(b), 416.315; 416.1510(b)).

13

236, 247–48 (D.D.C. 2001) (explaining a movant for preliminary injunction cannot satisfy irreparable harm standard when the alleged harm is self-inflicted).

Plaintiffs contend that their irreparable harm is similar to that suffered by plaintiffs in other cases who faced the loss of subsistence benefits as a result of agency delay in processing applications.  (Pl. Supp. Br. 2–3 (citing *Garnett v. Zeilinger*, 313 F. Supp. 3d 147, 151–52 (D.D.C. 2018); *District of Columbia v. U.S. Dep't of Agric.*, 2020WL 1236657, *31 (D.D.C. Mar. 13, 2020)).)  For example, in *Garnett*, plaintiffs claimed that the District of Columbia Department of Human Services failed to process initial applications and recertifications for SNAP benefits within statutory time limits.  313 F. Supp. 3d at 153.  The court found that plaintiffs had established irreparable harm from the potential loss of subsistence benefits.  *Id.* at 157.  Plaintiffs had established that annually 2,000 to 4,000 households were not receiving SNAP benefits on time.  *Id.* at 158.  Here, Plaintiffs have not made a similar showing.  They contend that delayed applications will result in irreparable harm from the loss of funds and other related benefits to which they might be entitled.  Unlike the plaintiffs in *Garnett* and the other cases upon which they rely, Plaintiffs have not shown that SSA's application procedures have delayed any award of benefits or that SSA is not considering applications in a timely manner.  *Cf. District of Columbia v. U.S. Dep't of Agric.*, 2020WL 1236657, *31 (D.D.C. Mar. 13, 2020) (granting preliminary injunction after finding that plaintiffs had "shown with enough certainty that they are likely to lose their SNAP benefits as a result of the Rule" being challenged); *Reynolds v. Giuliani*, 35 F. Supp. 2d 331, 339-40, 342 (S.D.N.Y. 1999) (finding irreparable harm where a state agency routinely failed to provide food stamps and Medicaid benefits on time in compliance with federal statutes and regulations).  Before and during the pandemic, SSA has

14

continuously processed applications and Plaintiffs have not shown that they are at risk of losing benefits because of SSA's application procedures.

Therefore, because Plaintiffs have not met their burden to show irreparable harm, the court will deny their motion for preliminary injunction.

### 3. Temporary and Voluntary Changes

Plaintiffs contend that because SSA made temporary and voluntary changes in response this litigation, a preliminary injunction remains necessary. (Pl. Reply at 21–23.) While SSA's voluntary changes do not necessarily moot the case, *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000), Plaintiffs must satisfy the court that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Am. Fed'n of Gov't Emps. v. District of Columbia*, No. 05-CV-0472, 2005 WL 1017877, at *12 (D.D.C. May 2, 2005) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Plaintiffs have not shown a "cognizable danger" that, during the pendency of this litigation, SSA will reverse course and resume their previous procedures and restore the inaccurate language regarding blind applicants using the online application. Therefore, the court finds that Plaintiffs have not shown a continued need for injunctive relief based on irreparable harm from the risk of contracting COVID-19.

The court commends both parties for their dedication to serving at-risk populations during the pandemic. Given the agency's prompt response to Plaintiffs' wide-ranging concerns about the application and appointment processes, the court is hopeful that the parties can reach a resolution that continues to focus on the needs of the vulnerable populations they serve. However, this matter remains pending, and Plaintiffs are free to renew their motion should SSA disturb the status quo.

### B. Other Factors

The court need not address the other preliminary injunction factors in light of the Plaintiffs' failure to show irreparable harm. *See CityFed Fin. Corp.*, 58 F.3d at 747.

### IV. CONCLUSION

For the reasons stated, the court will DENY Plaintiffs' motion for preliminary injunction. A corresponding Order will issue separately.

Date: July 22, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge